# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff,*

vs.

AUSTIN ALAN RAY,

    *Defendant.*

Case No. 6:11-CR-10029-EFM

## MEMORANDUM AND ORDER

Petitioner Austin Alan Ray ("Petitioner") brings this Motion to Vacate, Set Aside, or Correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 66). Because review of Petitioner's motion and the accompanying court record conclusively shows that he is not entitled to relief, this Court denies the motion without an evidentiary hearing.

### I.    Factual and Procedural Background

On March 2, 2011, Petitioner was charged with one count of knowingly and intentionally receiving and distributing, by computer, visual depictions of minors, the production of which involved the use of minors engaging in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(2). Petitioner initially pleaded not guilty and was ordered released on a $25,000 unsecured appearance bond with supervision. On August 22, 2011, Petitioner appeared before

this Court and entered a plea of guilty to the knowing, intentional, and unlawful receipt of child pornography.[1] He did so without a plea agreement.

In its presentence investigation report ("PSR"), the Probation Office assigned Petitioner a total offense level of thirty-four (34), calculated as follows: (1) a base offense level of twenty-two (22), (2) a two-level enhancement because the material on Petitioner's computers involved prepubescent minors, (3) a four-level enhancement because the material portrayed sadistic or masochistic conduct or other depictions of violence, (4) a two-level enhancement for Petitioner's use of a computer, (5) a five-level enhancement because Petitioner had received more than 600 images, and (6) a two-level enhancement because Petitioner's offense involved the distribution of child pornography. The PSR also recommended a three-level downward adjustment given Petitioner's acceptance of responsibility and his timely guilty plea. Given Petitioner's criminal history category, which was determined to be category I, Petitioner's sentencing range under the Sentencing Guidelines was 151 to 188 months imprisonment.

In both written and verbal responses, Petitioner objected to the two-level enhancement for distribution of child pornography. Petitioner argued that the government had not offered any evidence that Petitioner distributed child pornography or that any of his downloaded files had been shared with another computer. Petitioner alternatively argued that, even if such file sharing *had* occurred, it had been unintentional. Petitioner therefore urged this Court to adopt a two-level reduction under USSG § 2G2.2(b)(1) because his conduct "was limited to the receipt or solicitation" of child pornography and involved no intent to distribute.[2] At sentencing, the

---

[1] Although the indictment charged the distribution of child pornography as well as its receipt, Petitioner pleaded guilty to receipt only.

[2] Under USSG § 2G2.2(a)(2), a defendant's base offense level is twenty-two (22) unless the defendant is convicted under 18 U.S.C. §§ 1466A(b), 2252(a)(4), 2252A(a)(5), or 2252A(a)(7). Under § 2G2.2(b)(1), if: (1)

government conceded that: (1) it could make no *direct* showing that the files on Petitioner's computers had been shared with other computers, and (2) it could not prove that the "share" function on Petitioner's version of the software[3] used to download the pornographic images was purposely enabled by Petitioner, rather than being a standard default setting. However, the government argued that Petitioner's use of a peer-to-peer file-sharing program constituted a "generic distribution" that triggered the two-level enhancement as a matter of law. This Court overruled Petitioner's objections and accepted the PSR's calculation of an offense level of thirty-four (34) and a criminal history category of I.

This Court ultimately sentenced Petitioner to 102 months imprisonment, well below the Guideline recommendation. In rendering its decision, the Court explained that it took into consideration a number of factors, including the brutality and quantity of the images in Petitioner's possession, the need for deference to Congress's penal determinations, the local community's expressions of support for Petitioner, and Petitioner's personal characteristics, including his youth and professed desire for rehabilitation. This Court also placed Petitioner on a seven-year term of supervised release, which required Petitioner to register as a sex offender. In addition to the standard conditions of supervised release, this Court also imposed seventeen (17) special conditions which included, among other things:

    (1) no unsupervised contact with minors unless approved by the probation officer;

---

subsection (a)(2) applies; (2) the defendant's conduct was limited to the receipt or solicitation of material involving the sexual exploitation of a minor; and (3) the defendant did not intend to traffic in, or distribute, such material, the defendant's base offense level should be decreased by two levels.

    [3] Petitioner used Shareaza, a peer-to-peer file-sharing program, to search for and download child pornography using search terms such as "boy" and "kid sex." Shareaza operates in a manner similar to other file-sharing programs in that it "allows users to search for, download, and share various types of files, including videos and pictures, over the Internet, with other . . . users." *United States v. Espinoza*, 403 F. App'x 315, 316 (10th Cir. 2010) (unpublished) (describing the file-sharing program Limewire).

(2) successful participation in a mental health treatment program and/or sex offender treatment program;

(3) submission and maintenance of his current computer inventory, as well as a monthly record of his computer use and bills relating to computer access, to the probation officer;

(4) no access of any on-line, computer, or Internet services, sites, or media that include or feature material that depicts sexually explicit conduct involving adults or minors;

(5) no possession or control of any material that depicts sexually explicit conduct involving adults or minors;

(6) consent to periodic unannounced and/or random examinations of his computer, Internet-capable devices, hardware, and software, which may include retrieval and copying of all data from his computer(s) or removal of such equipment;

(7) submission of his person or property to searches at a reasonable time and in a reasonable manner based upon reasonable suspicion of contraband or evidence of a violation of one of the conditions of his release; and

(8) successful participation in an approved program for substance abuse, abstain from the use of alcohol and other intoxicants during his participation in the program, and share in the costs.

Petitioner filed a direct appeal, alleging the following assignments of error: (1) inappropriate application of the two-level enhancement for distribution of child pornography; (2) violation of his Fifth and Sixth Amendment rights to due process and a jury trial because of this enhancement; (3) flouting the commands of 18 U.S.C. § 3553 by giving more than the permissible level of deference to the Sentencing Guidelines, refusing to consider Petitioner's history as a victim of sexual abuse, and erroneously concluding that Petitioner had deleted the pornographic images only in anticipation of discovery by authorities; and (4) a substantively unreasonable sentence. On February 5, 2013, the United States Court of Appeals for the Tenth Circuit affirmed Petitioner's sentence.

On October 28, 2013, Petitioner filed a Motion to Vacate, Set Aside, or Correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. 66). In his motion, Petitioner claims ineffective assistance of counsel based on his counsel's alleged failure to object to and/or appeal some of the special conditions of his supervised release. Petitioner also alleges that his sentence violated his Eighth Amendment right against cruel and unusual punishment. Based on a review of the record, this Court finds Petitioner's assignments of error to be without merit.

## II. Legal Standard

Under § 2255(a),

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

According to Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts,

> [t]he judge who receives the motion must properly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

The court must hold an evidentiary hearing on a § 2255 motion "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief."[4] The petitioner must allege facts that, if proven, would warrant relief from his conviction or sentence.[5] An

---

[4] 28 U.S.C. § 2255(b).

[5] *See Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995), *cert. denied*, 517 U.S. 1235 (1996).

evidentiary hearing is not necessary where a § 2255 motion contains factual allegations that are contradicted by the record, inherently incredible, or when they are conclusions rather than statements of fact.[6]  A district court may grant relief under § 2255 if it determines "that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack."[7]

### III. Analysis

**A. Procedural Default**

First and foremost, this Court notes that Petitioner's § 2255 claims were not raised on direct appeal.  Since "a § 2255 motion is not intended as a substitute for an appeal . . . failure to raise an issue either at trial or on direct appeal imposes a procedural bar to habeas review."[8]  A petitioner may overcome this procedural bar by successfully showing either one of two "well recognized exceptions."[9]  First, a petitioner may "show good cause for not raising the issue earlier *and* actual prejudice to the movant's defense if the issue is not considered."[10]  Cause may "be established by showing that counsel rendered constitutionally ineffective assistance."[11]  In

---

[6] *See id.* (stating that "the allegations must be specific and particularized, not general or conclusory"); *see also United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (rejecting ineffective assistance of counsel claims that were merely conclusory in nature and without supporting factual averments).

[7] 28 U.S.C. § 2255(b).

[8] *United States v. Cervini*, 379 F.3d 987, 990 (10th Cir. 2004), *cert. denied*, 544 U.S. 904 (2005).

[9] *Id.*

[10] *United States v. Molina*, 2013 U.S. Dist. LEXIS 174618, at *12 (D. Kan. Dec. 13, 2013) (citing *Cervini*, 379 F.3d at 990) (emphasis added).

[11] *United States v. Wiseman*, 297 F.3d 975, 979 (10th Cir. 2002) (internal citations omitted).

the alternative, "because a writ of habeas corpus is 'at its core, an equitable remedy,'"[12] a petitioner may show that a "failure to consider the federal claims will result in a fundamental miscarriage of justice."[13]

**B. Ineffective Assistance of Counsel**

Petitioner alleges ineffective assistance of counsel due to his counsel's alleged failure to object to and/or appeal the following special conditions of Petitioner's supervised release: (1) no unsupervised conduct with minors without permission of his probation officer; (2) no possession of material that depicts sexually explicit conduct involving adults; (3) periodic unannounced/random examinations of Petitioner's computer(s) and all related items; and (4) Petitioner's participation in a substance abuse program, a prohibition against his use of alcohol and/or other intoxicating substances during his participation in that program, and his partial payment of the costs of that program.

In general, to succeed on a claim of ineffective assistance of counsel, a petitioner must meet the two-prong test set forth in *Strickland v. Washington*.[14] Under *Strickland*, a petitioner must prove that: (1) his counsel's representation was constitutionally deficient because it fell below an objective standard of reasonableness, and (2) the deficiency prejudiced the petitioner because it deprived him of the right to a fair trial.[15] To prevail on the first prong, a petitioner must demonstrate that the omissions of his counsel fell "outside the wide range of professionally

---

[12] *Cervini*, 379 F.3d at 990 (quoting *Schlup v. Delo*, 513 U.S. 298 (1995)).

[13] *Molina*, 2013 U.S. Dist. LEXIS 174618, at *12 (citing *Cervini*, 379 F.3d at 990) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)); *see also Bousley v. United States*, 523 U.S. 614, 621-22 (1998) (holding that a showing of actual innocence meets the fundamental miscarriage of justice prong).

[14] 466 U.S. 668 (1984).

[15] *Id.* at 687-88.

competent assistance."[16] This standard is "highly demanding."[17] Strategic or tactical decisions on the part of counsel are presumed correct unless they were "completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense strategy."[18] The reasonableness of the challenged conduct must be evaluated from counsel's perspective at the time of the alleged error.[19] "[E]very effort should be made to eliminate the distorting effects of hindsight."[20]

With regard to the second prong, a petitioner "must show there is a reasonable probability that, but for his counsel's professional errors, the result of the proceeding would have been different."[21] A reasonable probability is a "probability sufficient to undermine confidence in the outcome."[22] This requires the court to focus on "the question [of] whether counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair."[23] In cases where a petitioner pleads guilty, the Supreme Court has held that prejudice can only be shown if there is "a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial."[24] Courts reviewing an attorney's performance must exercise deference, as "counsel is strongly presumed

---

[16] *Id.* at 690.

[17] *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).

[18] *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (quoting *Hatch*, 58 F.3d at 1459) (quoting *United States v. Ortiz Oliveras*, 717 F.2d 1, 4 (1st Cir. 1983)).

[19] *See Edens v. Hannigan*, 87 F.3d 1109 (10th Cir. 1996).

[20] *Id.* at 1114 (quoting *Strickland*, 466 U.S. at 689).

[21] *Strickland*, 466 U.S. at 694.

[22] *Id.*

[23] *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

[24] *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."[25] Based on a review of the record, this Court finds Petitioner unable to meet the standards required for a successful ineffective assistance of counsel claim.

### 1. Objective standard of reasonableness

District courts have broad discretion to prescribe special conditions of supervised release.[26] This discretion, however, is not without limits. Any conditions imposed "must satisfy the three statutory requirements laid out in 18 U.S.C. § 3583(d)."[27] These requirements can be summarized as follows:

> [f]irst, they must be reasonably related to at least one of [the] following: the nature and circumstances of the offense, the defendant's history and characteristics, the deterrence of criminal conduct, the protection of the public from further crimes of the defendant, and the defendant's educational, vocational, medical, or other correctional needs. Second, they must involve no greater deprivation of liberty than is reasonably necessary to achieve the purpose of deterring criminal activity, protecting the public, and promoting the defendant's rehabilitation. Third, they must be consistent with any pertinent policy statements issued by the Sentencing Commission.[28]

In addition to these statutory requirements, "the conditions must also comport with the relevant constitutional provisions."[29]

#### a. No unsupervised contact with minors

With regard to the first special condition, that Petitioner "shall refrain from any unsupervised contact with minors during the term of supervision unless approved by the

---

[25] *Strickland*, 466 U.S. at 689-90.

[26] *United States v. Mike*, 632 F.3d 686, 692 (10th Cir. 2011).

[27] *Id*. (citing *United States v. Hahn*, 551 F.3d 977, 982 (10th Cir. 2008)).

[28] *Mike*, 632 F.3d at 692 (internal citations omitted).

[29] *Id*.

probation officer," Petitioner alleges error based on vagueness. According to Petitioner, it is impossible to determine if, for example, the condition prohibits him from seeing or visiting minor children relatives or being in the presence of minors who appear at his home or the homes of his relatives unannounced. Petitioner also alleges error based on the fact that he was neither indicted for, convicted of, or sentenced to any offense that involved the *physical* harm of children, nor was there any evidence that he was in danger of committing such an offense. Petitioner's arguments are without merit.

Although the prohibition against unsupervised contact with minors does not go into detail with regard to acceptable or unacceptable contact, such detail is not necessary. Courts in the Tenth Circuit have consistently upheld similar allegedly vague special conditions. For example, in *United States v. Mike*, a defendant was convicted of assaulting an elderly individual and was subsequently required to register as a sex offender.[30] In addition to the standard sex offender conditions, and even though the defendant's offense did not involve a minor, the district court ordered that the defendant refrain from contact with children under the age of eighteen and report any such contact to his probation officer.[31] On appeal, the defendant challenged this condition, arguing that it was vague, over-broad, offered no guidance as to what constituted contact with children, and, as such, effectively excluded him from any place where a child might be.[32] The Tenth Circuit overruled the defendant's claims and upheld the condition. In its reasoning, the

---

[30] *Id*. at 690.

[31] *Id*.

[32] *Id*. at 696.

appellate court noted that "it is well established that associational conditions do not extend to casual or chance meetings."[33]

Furthermore, the holding in *Mike* also shows that the prohibition against contact with minors was reasonable despite the fact that Petitioner's offense did not involve *actual* contact with minors. If a court may impose such a restriction on an individual whose underlying crime has nothing to do with children, then certainly it is a reasonable consequence for Petitioner, whose underlying crime involves the receipt of child pornography. Such a restriction is directly tied to the "nature and circumstances of the offense." Therefore, counsel was not deficient in failing to object to the imposition of this restriction and counsel's alleged failure to do so cannot now be categorized as ineffective assistance of counsel.

### b. No access to or possession of material that depicts sexually explicit conduct involving adults

Petitioner next argues that the restrictions on his ability to either view on his computer or physically possess material that depicts sexually explicit conduct involving adults are not "reasonably related to the nature and circumstances of the offense nor [Petitioner's] history," and "involve a greater deprivation of liberty than is reasonably necessary."[34] In support of his argument, Petitioner notes that the crime for which he pled guilty had nothing to do with conduct involving adults, and, further, that there is no law prohibiting most adult pornography. His arguments are without merit.

---

[33] *Mike*, 632 F.3d at 697 (citing *United States v. Loy*, 237 F.3d 251, 269 (3d Cir. 2001) (holding that a special condition of no unsupervised contact with minors for a defendant who pled guilty to knowingly receiving child pornography was appropriate)). *See also United States v. Kennedy*, 2003 U.S. Dist. LEXIS 16856, at *1 (D. Kan. Sept. 24, 2013) (imposing a prohibition against unsupervised contact with minors on a defendant who was convicted of receiving visual depictions of minors engaged in sexually explicit conduct).

[34] Doc. 66, at 21.

Restrictions on sexually explicit material involving adults are not uncommon to those convicted of child pornography offenses. In *United States v. Shea*,[35] the Tenth Circuit determined that a condition similar to the one imposed in Petitioner's case was reasonable for a defendant who had been convicted of possessing child pornography.[36] The court noted that as long as the defendant "continued to engage in viewing adult pornography, the potential existed he would again engage in the illegal conduct of viewing child pornography, making the risk of recidivism . . . high."[37] This type of finding is not unique to the Tenth Circuit. For example, the Eighth Circuit has "repeatedly upheld similar bans on the possession of both adult and child pornography when a defendant has been convicted of possessing, receiving, or distributing child pornography."[38]

Here, although the vast majority of sexually explicit images found on Petitioner's computers involved children, the PSR did note that the computer owned by Petitioner's brother and used by Petitioner did contain some adult pornography. While Petitioner's brother claimed responsibility for those images, the PSR also indicated that Petitioner had received emails containing images of adults performing sexual acts on nude males under the age of twelve. Therefore, this Court finds that the special conditions prohibiting Petitioner from having, either on his computer or in his physical possession, material that depicts sexually explicit conduct

---

[35] 512 Fed. Appx. 770 (10th Cir. 2013) (unpublished).

[36] *Id.* at 773.

[37] *Id.* (internal citations omitted).

[38] *See United States v. Thompson*, 653 F.3d 688, 694 (8th Cir. 2011) (upholding a special condition that prohibited the defendant from possessing child or adult pornography after his conviction for the receipt and distribution of child pornography). *See also United States v. Wiedower*, 634 F.3d 490, 497 (8th Cir. 2011) (upholding a prohibition on the possession of adult pornography where the defendant displayed only an affinity for child pornography because the condition helped reduce the "chance [that the defendant] would relapse into this dark world.").

involving adults were reasonable, as they relate to both the nature and circumstances of the offense as well as the deterrence of criminal conduct. As such, Petitioner's counsel was not deficient in not raising any objection to these conditions.

### c. Periodic unannounced and/or random examinations of Petitioner's computer(s)

Next, Petitioner contests the special condition that requires him to consent to periodic unannounced and/or random examinations of any computer, Internet-capable devices, hardware, or software under his control. In support of his argument, Petitioner claims that this "suspicionless search" condition is neither a required or discretionary condition of supervised release set forth under either federal or Kansas statutes, nor is it a required or recommended condition under the sentencing guidelines. Again, Petitioner's argument is without merit.

Probationary searches are not uncommon as a general rule or as applied in instances of child pornography offenses. In *United States v. White*,[39] the defendant was convicted of receiving child pornography, for which he received prison time as well as a period of supervised release with special conditions.[40] After his second violation of one of those special conditions, the district court ordered additional prison time and special conditions, one of which included probationary searches of the defendant's home, automobile, or person.[41] The defendant appealed, claiming that these "unwarranted and suspicionless" searches violated his Fourth Amendment rights.[42] The district court rejected the defendant's objection, stating that

---

[39] 244 F.3d 1199 (10th Cir. 2001).

[40] *Id.* at 1201.

[41] *Id.*

[42] *Id.* at 1208.

[i]t's not a matter of searching *anybody*, it's a matter of searching someone who has been convicted of a serious offense . . . The point is to try to make sure that there is [sic] no additional victims while a person is serving the remainder of supervised release.[43]

On appeal, the Tenth Circuit affirmed the inclusion of probationary searches in the defendant's sentence.[44]

The Tenth Circuit has also explained generally that "the purpose of supervised release is to provide enough supervision to prevent recidivism on the part of the offender."[45] Since Petitioner was convicted of receiving child pornography, it stands to reason that one effective means of preventing him from committing a similar offense in the future is to require him to submit to searches of his computer after he has been released from prison but while he is still subject to supervised release. This Court therefore finds the special condition to be appropriate. As such, Petitioner's counsel was not deficient in failing to object to the restriction.

### d. Successfully participate in a program for substance abuse/refrain from the use of alcohol and other intoxicants/share in the cost of the program

Finally, Petitioner contests the condition that requires him to: (1) successfully participate in a program for substance abuse, (2) abstain from the use of alcohol and other intoxicants during this program, and (3) share in the cost of the program. In support of his claim, Petitioner argues that this condition does not relate to the nature and circumstances of his offense or his history and characteristics. He also alleges that by requiring him to share in the cost for the program, this Court exceeded the scope of its authority. Petitioner's arguments are without merit.

---

[43] *Id.*

[44] *White*, 244 F.3d at 1208.

[45] *United States v. Hanrahan*, 508 F.3d 962, 971 (10th Cir. 2007).

Upon search of Petitioner's home at the time of his arrest, federal agents found marijuana, marijuana pipes, a scale, a packing tool, and marijuana cigarette butts in Petitioner's bedroom. While Petitioner's father ultimately admitted ownership of these items, a psychiatric consultation noted that Petitioner suffered from cannabis dependence. Petitioner himself reported past use of alcohol and marijuana, stating that he first consumed alcohol at the age of fifteen and admitted to consuming it once every month to once every other month. Petitioner claimed to have last consumed alcohol in July 2009, a little more than a year before the search of his home. Petitioner also admitted to first smoking marijuana at the age of fourteen and stated that he smoked three to six times per day in an effort to alleviate his mental health symptoms. Petitioner last reported smoking marijuana in November 2010, the same month as the search of his home.

As stated above, any conditions imposed upon a defendant with regard to supervised release must satisfy the three statutory requirements set forth in 18 U.S.C. § 3583(d), the first of which requires that the condition be reasonably related to at least one of a variety of options, including the defendant's history and characteristics.[46] Given Petitioner's admitted history of alcohol and marijuana use, he cannot now say that a special condition requiring him to seek treatment and refrain from the use of intoxicating substances was unrelated to his history and characteristics. This Court therefore finds counsel's alleged failure to object to this special condition was not deficient.

In sum, as stated above, to succeed on a claim of ineffective assistance of counsel, a petitioner must meet the two-prong test set forth in *Strickland*. Under this test, a petitioner must

---

[46] *Mike*, 632 F.3d at 692.

first prove that his counsel's representation was constitutionally deficient because it fell below an objective standard of reasonableness.[47] To do so, a petitioner must demonstrate that the omissions of his counsel fell "outside the wide range of professionally competent assistance."[48] Here, it is clear that counsel's alleged failure to object to specific conditions of Petitioner's supervised release was not deficient, given both the case law as well as the relationship between the conditions and Petitioner's offense, history, and characteristics. Given Petitioner's failure to meet the first *Strickland* prong, this Court finds analysis under the second prong to be unnecessary. Petitioner's first assignment of error is without merit and is therefore dismissed.

## C. Cruel and Unusual Punishment in Violation of the Eighth Amendment

In his second assignment of error, Petitioner advances a *facial*, as opposed to an as-applied, attack against USSG § 2G2.2, dealing with the receipt of child pornography, alleging that, as currently set forth, the Guideline allows for a sentence that is "grossly disproportionate" to the underlying offense, especially for a first-time offender.[49] As such, Petitioner argues that § 2G2.2 violates the Eighth Amendment's prohibition against cruel and unusual punishment. Again, as an initial matter, it is important to note that Petitioner failed to raise this issue on his direct appeal to the Tenth Circuit. To overcome this procedural bar, Petitioner must now either show good cause and actual prejudice[50] or, in the alternative, that failure to consider this claim will result in a fundamental miscarriage of justice.[51]

---

[47] *Strickland*, 466 U.S. at 687-88.

[48] *Id*. at 690.

[49] Doc. 66, at 25.

[50] *Molina*, 2013 U.S. Dist. LEXIS 174618, at *12 (citing *Cervini*, 379 F.3d at 990).

[51] *Id*.

Petitioner fails to provide *any* explanation as to his failure to raise this issue on direct appeal to the Tenth Circuit, let alone sufficient good cause. "Good cause can be shown if the defendant's claim is so novel that its legal basis [was] not reasonably available to counsel, or if the defendant demonstrates that defense counsel was constitutionally ineffective."[52] Petitioner cannot show good cause because his counsel was not ineffective and because his claim is not novel. There is no doubt that USSG § 2G2.2 existed at the time of Petitioner's appeal and that Petitioner had ample opportunity to raise this issue on direct appeal. Furthermore, Petitioner has not alleged, nor can he show, that failure to address this claim will result in a fundamental miscarriage of justice. The United States Supreme Court has held that one can only satisfy this exception if he is "actually innocent."[53] Here, Petitioner is clearly not innocent of the offense for which he was charged and sentenced, as evidenced by his knowing and voluntary guilty plea. Petitioner therefore fails to overcome the procedural bar to his second assignment of error. As such, his claim is dismissed.

**D. Certificate of Appealability**

Rule 11 of the Rules Governing Section 2255 Proceedings requires a district court to issue or deny a certificate of appealability upon entering a final adverse order.[54] This certificate "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."[55] The applicant must demonstrate that "reasonable jurists could debate

---

[52] *Hardridge v. United States*, 2007 U.S. Dist. LEXIS 52269, at *24 (D. Kan. July 18, 2007) (internal citations omitted).

[53] *United States v. Young*, 557 F. Supp. 2d 1216, 1222 (10th Cir. 2008) (citing *Bousley v. United States*, 523 U.S. 614, 623 (1998)).

[54] *Smith v. United States*, 2013 U.S. Dist. LEXIS 64825, at *10-11 (D. Kan. May 7, 2013).

[55] 28 U.S.C. § 2254(c)(2).

whether . . . the petition should have been resolved in a different manner or that the issues were adequate to deserve encouragement to proceed further."[56] Defendant fails to meet this standard. The Court therefore declines to issue a certificate of appealability for this order.

**IT IS THEREFORE ORDERED** that Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody (Doc. 66) is hereby **DENIED.**

**IT IS SO ORDERED**.

Dated this 23rd day of April, 2014.

*(signature)*
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[56] *Smith*, 2013 U.S. Dist. LEXIS 64825, at *11 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).